# EXHIBIT B

Case 2:11-cv-00754-RSWL-FFM   Document 40-2   Filed 04/12/11   Page 1 of 4   Page ID #:335

# International and Domestic Arbitration in Switzerland

## SECOND EDITION
## UPDATED AND REVIEWED

By

**BERNHARD BERGER**
Doctor in Law
LL.M. (Harvard)
Attorney at law
Associate Lecturer at the University of Berne
Kellerhals Attorneys at Law, Basle/Berne/Zurich

**FRANZ KELLERHALS**
Doctor in Law
Attorney at law
Honorary Professor of the University of Berne
Kellerhals Attorneys at Law, Basle/Berne/Zurich

SWEET & MAXWELL     THOMSON REUTERS

 Stämpfli Publishers Ltd

*The arbitral procedure*

947 first shall, on its own motion (ex officio), declare the claim inadmissible because of lack of a condition of admissibility (cf., e.g. CCP, Art.59(2)(d)).[18]

In arbitration, proceedings pending between the same parties on the same cause of action have been a traditional source of difficulties. Before analyzing the various possible situations that may arise, note that the Swiss Federal Tribunal treats the problem as an issue of *jurisdiction*, with the effect that the decision of an arbitral tribunal to stay or to continue with the proceedings, notwithstanding an action pending between the same parties on the same subject-matter, is subject to the ground for annulment stated in PILS, Art.190(2)(b) or CCP, Art.393(b).[19]

*a) State court seized second when another State court was seized first*

948 Where the same cause of action between the same parties has been brought before two or more *State courts*, the rule in both domestic and international conflicts of jurisdiction is that the court seized second shall ex officio stay its proceedings until such time as the court seized first has decided on its jurisdiction (PILS, Art.9(1); LugC, Art.27(1); CCP, Art.64(1)(a)). If the court seized first accepts jurisdiction, any court other than the court seized first shall decline jurisdiction in favor of that court (PILS, Art.9(3) and LugC, Art.27(2)). In other words, the *court seized first has temporal priority* over the decision on jurisdiction.[20]

*b) State court seized second when an arbitral tribunal was seized first*

aa) Arbitral tribunal with its seat in Switzerland seized first

949 Since CCP, Part 3 took effect, the issue of whether or not a State court seized second must stay its proceedings if an *arbitral tribunal* was seized first is addressed in CCP, Art.372(2). This provision reads as follows:

"If proceedings involving the same cause of action between the same parties are pending before a State court and an arbitral tribunal, the authority seized second shall stay its proceedings until such time as the first has decided on its jurisdiction."

CCP, Art.372(2) thus stipulates for Swiss State courts that the principle of temporal priority (cf. para.948) must be observed, no matter whether the authority seized first is another State court or an arbitral tribunal.

CCP, Art.372(2) is one of the rules on domestic arbitration. Technically, it therefore only addresses the case where a *domestic arbitral tribunal with its seat*

---

[18] Vogel and Spühler, 8 N 43.
[19] BGE 127 III 279 E. 2a, referring to BGE 123 III 414 E. 2b (on former LugC, Art.21). Contra: Kaufmann-Kohler and Rigozzi, N 456c and 813b. Cf. also paras 951k and 1553.
[20] Cf. Castelberg, 17–107. In contrast to LugC, Art.27 and CCP, Art.64, the judge who has to apply PILS, Art.9 shall, in addition, consider whether the foreign court "will render, within a reasonable time, a decision that may be recognized in Switzerland."

---

§ 17 Commencement of the arbitration

*in Switzerland* was seized first. However, we consider that Swiss State courts should likewise have to revert – by analogy – to the principle laid down in CCP, Art.372(2) if an *international arbitral tribunal with its seat in Switzerland* was seized first.[21] After all, the need to avoid unnecessary parallel proceedings and conflicting decisions does not only exist in domestic, but also in cross-border relations.

bb) Arbitral tribunal with its seat abroad seized first                                                                         949a

If a Swiss State court is confronted with proceedings on the same cause of action between the same parties pending before an *arbitral tribunal with its seat abroad*, it must first be noted that the NYC fails to address the problem.[22] The prevailing opinion in Swiss legal doctrine is that State courts should apply PILS, Art.9 (or LugC, Art.27) by analogy.[23] while the Federal Tribunal has not decided the issue so far.[24] The main purpose of the "barrier effect" of lis alibi pendens is, as already mentioned, to prevent conflicting decisions on the same cause of action between the same parties. According to the Federal Tribunal, the principle of *temporal priority* stipulated in PILS, Art.9, LugC, Art.27 and CCP, Art.372(2) is (together with the principle of res judicata) of such fundamental importance that it is a matter of public policy.[25] Against this background, it seems only logical to require the Swiss State court seized second to observe PILS, Art.9 and LugC, Art.27 by analogy in cases where proceedings on the same cause of action between the same parties are pending before an arbitral tribunal with its seat abroad.

*c) Arbitral tribunal seized second when a State court was seized first*                                                        950

In conflicts between two or more State courts, the principle of temporal priority ensures that any court seized second shall stay its proceedings until such time as the court seized first has decided on its jurisdiction (cf. para.948). Hence, one may ask whether this "barrier effect" of lis alibi pendens should also apply where an arbitral tribunal was seized second. For a long time there were no statutory provisions in the Swiss *lex arbitri* which dealt with this matter. This has now changed significantly with PILS, Art.186(1bis) and CCP, Art.372(2).

---

[21] Cf. Besson, *Relationships*, 71–73.
[22] Cf. BGE 127 III 279 E. 2c/dd. However, see European Convention, Art.VI(3) (not ratified by Switzerland).
[23] Schweizer and Guillod, 74; BSK-Berti, 1st edn, Art.7 N 11; Oetiker, N 190. In similar terms Vischer, Huber and Oser, N 1463; Dutoit, Art.9 N 5bis. More cautious, Lalive, Poudret and Reymond, Art.7 N 7.
[24] In BGE 121 III 495 E. 6c, however, it was stated obiter that "issues which may give rise to a conflict of jurisdiction [between courts and arbitral tribunals] must be resolved by applying the rules governing lis pendens (cf., e.g. PILS, Art.9), res judicata or the recognition and enforcement of foreign judgments (PILS, Arts 25 et seq.)."
[25] Cf. the obiter dictum in BGE 116 II 625 E. 4a; BGE 127 III 279 E. 2b.

## The arbitral procedure

### 5. Stay of proceedings

1071  Events of all kinds may make it advisable for the arbitral tribunal to order a temporary stay of its proceedings. Any stay of proceedings normally leads to a delay or even denial of justice (*Rechtsverzögerung oder Rechtsverweigerung*). Because of these potential adverse effects of a stay the Federal Tribunal held that an arbitral tribunal "should, in case of doubt, accord priority to the principle that the proceedings must be concluded within reasonable time".[99]

1072  In other words, the arbitral tribunal may only suspend its proceedings in extraordinary situations, whether based upon a statutory provision or for other compelling reasons. Such a reason may, for example, exist if "events occur that affect the legal existence or the capacity to act of a party, or if matters must be clarified which are important for the outcome of the case but are beyond the jurisdiction of the arbitral tribunal".[100]

1073  Unless statutory provisions or an agreement between the parties prevail, the arbitral tribunal has full discretion when ruling on a request for a stay. In exercising this discretion, it shall balance the conflicting interests of the parties against each other, in particular with due consideration to equal treatment and the right to be heard (PILS, Art.182(3) and CCP, Art.373(4)).[101] The decision on a stay forms part of the arbitral tribunal's determinations on the conduct of the arbitration; therefore, it shall thus take the form of a procedural order.[102]

1074  The issue as to whether or not an arbitral tribunal should stay its proceedings may arise, notably, in the following situations:[103]

– while proceedings to challenge an arbitrator are pending (cf. paras 831–833).

– while proceedings for the replacement of an arbitrator are pending (cf. para.878) – but not if an arbitrator resigns or withdraws from his office without good cause (cf. paras 885–887).

– while an action for annulment against an interim award on jurisdiction is pending. According to legal doctrine and case law, the arbitral tribunal is free to stay its proceedings or to continue with the arbitration. In other words, it has no (statutory) obligation to order a suspension, not even if the action for annulment was granted suspensive effect.[104]

– if the required deposits as an advance for the costs of the arbitration are not paid in full (cf. paras 1448–1458).

---

[99] Decision 4P.64/2004 of 2 June 2004 E. 3.2.
[100] Decision 4P.64/2004 of 2 June 2004 E. 3.2 with reference to BGE 119 II 386 E. 1b and BGE 127 III 279 E. 2a–b. Furthermore cf. BGE 133 III 139 E. 6.1.
[101] BGE 119 II 386 E. 1b; Poudret and Besson, N 581 and N 585.
[102] Poudret and Besson, N 581(3) with references to exceptions.
[103] This list is not comprehensive. Further grounds for a stay may arise from other statutes or circumstances, for instance in case of death of a party.
[104] Jolidon, Art.9 N 4; Poudret and Besson, N 582; BGE 109 Ia 81 E. 2c.

## § 18 The proceedings before the arbitral tribunal

– if proceedings involving the same cause of action between the same parties are already pending before a State court or another arbitral tribunal (lis alibi pendens; cf. 945–953d).

1075  The maxim "*le pénal tient le civil en l'état*" does not form a part of Swiss law.[105] This rule of French law is driven by the view that civil courts should give priority to criminal courts if the decision on civil or commercial matters might depend on the outcome of criminal proceedings. However, referring to CO, Art.53, the Federal Tribunal held as follows (BGE 119 II 386):

"It is thus not possible to state, without further ado, that this maxim [i.e. *le pénal tient le civil en l'état*] is one of the fundamental principles of the Swiss legal system and of its system of values." (E. 1c)

According to this judgment, a party who applies for a temporary stay of the arbitration by invoking pending criminal proceedings may not rely on its right to be heard. The fact that the criminal proceedings might possibly produce new information is not sufficient reason for a suspension (BGE 119 II 386):[106]

"In arbitration, [...], a party may in principle obtain a stay of proceedings only if matters must be clarified which are decisive for the outcome of the case but are beyond the jurisdiction of the arbitral tribunal (...). Cases in which difficulties of a probative nature arise do not fall into this category; the possibility of an absence of proof is inherent to civil procedure; the rules on the burden of proof then achieve their true significance." (E. 1b)

1076  However, the arbitral tribunal may, in its discretion, stay its proceedings until such time as the results of the criminal proceedings, which it considers decisive for the outcome of the arbitration, are available.[107]

The Swiss *lex concursus* provides special grounds for a stay of proceedings. All civil proceedings to which the bankrupt is a party and which may affect the bankrupt's estate shall be stayed (SchKG, Art.207(1)), and may only be resumed: (i) in the ordinary procedure at the earliest 10 days after the second meeting of creditors; (ii) in the summary procedure at the earliest 20 days after the publication of the schedule of claims. SchKG, Art.207(1) is a mandatory provision.[108] It extends to all parties against which bankruptcy proceedings have been commenced in Switzerland.[109] The purpose of the stay is to ensure that the administrator, receiver or trustee of the estate has sufficient time to decide carefully whether or not to continue with the proceedings.[110]

---

[105] Translation: "criminal justice keeps civil justice waiting". Cf. BGE 119 II 386 E. 1c. For further details see Poncet and Macaluso, *FS Kellerhals*, 65–73.
[106] See also on this point Poncet and Macaluso, *FS Kellerhals*, 72.
[107] Poudret and Besson, N 583.
[108] Amonn and Walther, §41 N 16; Lévy, *Insolvency*, 101.
[109] BSK-Wohlfahrt, Art.207 SchKG N 13.
[110] BSK-Wohlfahrt, Art.207 SchKG N 14; Lévy, *Insolvency*, 102.