# EXHIBIT C

Protection of invention. No. 27.                           167

**VII. PROTECTION OF INVENTION**

**PATENTS FOR INVENTION**

**27. Excerpt from the decision of the First Division for Civil Matters of 22 March 1949 in the matter of Soleà vs. Rosenberger & Hollinger.**

*Licensing agreement.*
Right to sue on the part of the licensee for nullity of patent (Consid. 1).
Effects of the retrospective determination of patent nullity on the licensing agreement and any licensing fees already paid and/or due (Consid. 3).

[See original for duplicate text in French and Italian.]

1.    – First of all, the issue of the plaintiff's right – contested by the defendant – to sue for nullity of the patent is to be reviewed.

*a)*    That the licensee's interest, on which Art. 16 (3) PatG [Patent Act] makes the right to file a plea of nullity contingent, exists in principle, is beyond doubt, because the existence of a valid patent is invariably the basis of the licensing agreement. By contrast, according to the adjudication of the federal court, the licensee is not entitled to file a plea of nullity if the nature of the licensing agreement has created a special fiduciary relationship between the parties. In this case a challenge by the licensee of the patent would constitute a breach of good faith (BGE 61 II 140). Such a fiduciary relationship may result, among others, from the fact that the licensing agreement in question has a corporate quality. Corporate quality as defined herein may, for example, be assumed if design drawings are to be exchanged and improvements are to be mutually communicated; also, if the invention is to be exploited for the parties' joint account and in connection therewith one of the parties may request insight into the books of the other. A corporate quality also exists if the parties to the licensing agreement also allow the other party the use of other patents or if orders, which one of the parties does not want or cannot fill, are then passed on to the other party (cf. RGZ 142 p. 214).

In the case at issue here no such condition is however fulfilled that would allow a conclusion as to a relationship with corporate character. Even though both parties intended to exploit the defendant's invention economically with benefits for themselves, however that purpose, albeit the same, was

168        Protection of invention. No. 27.

not a joint purpose as would be required for a corporate relationship to exist. What was missing was the characteristic cooperation, the development of a joint activity targeted to achieving the same goal.

*b)* However, even in the absence of a special fiduciary relationship, under certain conditions, a licensee must be denied the filing of a plea of nullity. This is the case when he has been granted the license specifically because the legal validity of the patent had been in doubt and the owner of the patent preferred to avoid the clarification of the question of the validity of the patent by granting a license to a competitor. Under such conditions, even in the absence of an express waiver on the part of the licensee in that direction, the filing of a plea of nullity on his part would have to be considered an abuse of law.

By contrast, the plea of nullity cannot be considered improper *per se* only because the licensee has refrained, without any good reason, from exploiting a patent which has remained unchallenged during the entire term of the licensing agreement, as the German Reich Court has assumed in RGZ 101 p. 235 et seqq. This opinion could at the most be held if, in accordance with the view expressed in the cited decision (p. 238), despite the retrospective nullification of the patent, the licensee remained obligated to pay the license fees accrued before to the full extent under any circumstances. Then he would indeed have no interest worth protecting in the nullification of the patent. However, this condition does not apply; rather–as will be shown in the following (and, incidentally, as the Reich Court has also assumed in RGZ 86 p. 55 et seqq.)–the nullification of the patent is apt to influence

Protection of invention. No. 27.        169

the licensee's legal position also with regard to the license fees accrued before. Therefore even a licensee who is in default may not be prevented *à priori* from striving for having a patent declared null and void.

*c)* According to the defendant's view the plea of nullity is supposed to be improper because the plaintiff, in order to justify his position, invokes patents that have long expired and have been forgotten in professional circles and, as a result of this conduct, destroys the *de-facto* monopoly position of the defendant.

This argument is untenable. According to the clear regulation of Art. 4 PatG, the existence of novelty-destroying publications within the country suffices to render the patent null and void. The law does not require that anyone has actually taken note of the pertinent publications, let alone practiced the invention (BGE 41 II 277). This provision is premised on the thought that only an actually new invention that serves to enrich a technology is to be worth protecting. We fail to see why a licensee who follows this concept should be deemed to have committed an abuse of the law.

Therefore in the case at issue here we concur with the lower court that the plaintiff's plea of nullity is not to be considered a violation of the principle of good faith.

(2. – Nullification of the patent of the defendant.)

3. – *a)* The nullity of the patent renders the underlying licensing agreement between the parties null and void as well, because the nullity of the patent, even if it has been declared only *ex post facto*, is original: legally the patent has never existed. Consequently, the licensing agreement, under which the defendant had to grant the plaintiff exclusive use of the patent for a certain territory and a certain time period, has an

impossible content because the defendant had never been in a position to make available to the plaintiff the absolute right of prohibition opposite third parties which secured the exclusivity with legal validity. Therefore, if the licensing agreement had impossible content, it is null and void in accordance with Art. 20 (1) OR [law of obligations]. To that extent the trial court is right. Another decision could only be arrived at if the licensing agreement set forth that the licensee was willing to assume the risk of the patent nullification. This, however, is not the case here: on the contrary, the plaintiff had the defendant specifically confirm the legal validity of the patent in the agreement.

Since the plaintiff specifically asserted the nullity of the patent as well as the ensuing nullity of the licensing agreement due to impossible content, there is no need for reviewing whether the judge would have to consider *ex officio* the impossibility of the contractual content, evident from the files, even without any party asserting it.

*b*) The lower court concludes from the nullity of the licensing agreement that the license fees paid by the plaintiff have no legal basis and therefore represent unjust enrichment of the defendant, requiring reimbursement. The federal court shared this view in principle in its unpublished decision of 17 May 1944 in the matter Schoop vs. Color-Metall A.-G. However, in that case the issue of the missed opportunity to exploit the patent was not discussed and the issue which is of interest in this case was not examined thoroughly at all.

On closer examination, in consideration of the peculiarities of patent law, unrestricted application of the consequences resulting from Art. 20 (1) OR turns out to be not feasible, because even if the nullified patent, in accordance

with the essence of nullity, must be considered non-existing *ex tunc*, it has nevertheless, due to its issue by a public authority and its putative existence based on such issue, created certain effects, which to some extent can no longer be eliminated. For example, the licensee who has exercised the rights accruing to him under the licensing agreement in fact enjoyed the same preferential position as long as the patent remained unchallenged as he would have been provided by a legally valid patent. He was able to manufacture and market the presumably patented product, undisturbed by competitors who did not have the benefit of a license; in view of the patent-protected special advantages customers paid a correspondingly higher price for the products; and, with an exclusive license, the licensor was deprived of the opportunity to exploit the putative patent himself based on the licensing agreement to which he considered himself bound. Especially in view of the last-mentioned circumstance it is therefore incorrect for the lower court to argue that the licensee did not owe the advantages accruing to him under the licensing agreement to the licensor.

It is only fair for these actual effects of the putative patent–effects which *ex post facto* can no longer be undone– to be somehow taken into account. The lower court believes that this could happen by the licensee reimbursing the licensor for any profit realized by him as unjust enrichment. However, determining such enrichment would pose considerable difficulties in practice since it is hardly ascertainable what part of the profit realized by the licensee he would have also had achieved without the putative patent and, on the other hand, it would be uncertain whether the licensor would have been in a position to achieve a similarly favorable result if he had

172     Protection of invention. No. 27.

exploited the putative patent himself. Furthermore, it would also seem rather questionable whether any profit lost to the licensor, to which, due to the nullity of the patent, he would have legally as little claim as the licensee, could be viewed as enrichment within the meaning of the law. Apart from these concerns this approach would not result in any satisfactory solution of the case at issue here, namely that the licensee did not take any advantage of the patent even though he could have done so, however, failed to do so, without the question of the validity of the patent having had any role in this question at all, because that question was not even discussed at the relevant time and was not challenged by any of the parties. A profit which the licensee merely missed to realize could, however, not be viewed as enrichment. On the contrary: it would be highly appalling if one were to impose the consequences of the licensee's passive conduct to the licensor who, based on the existence of the licensing agreement, was unable to exploit the patent himself. The licensee who was thus afforded a favorable business situation at the expense of the licensor, which he however failed to exploit, is much closer to the damages than the licensor.

Therefore, in view of the aforementioned no longer erasable effects of the putative patent, it is only right, despite the declaration of nullity, to grant the licensor a claim to the license fee for the past at least as a matter of principle, irrespective of whether the licensee exploited the patent or not. Contrary to the opinion of the lower court, the fact that Swiss law does not know a preliminary review is irrelevant. The factual situation is identical for the licensee and the licensor as far as the essential point is concerned. In this connection it is also irrelevant that the licensor expressly warranted the legal

Protection of invention. No. 27.     173

validity of the patent, because such a warranty only serves to provide the licensee, who is exploiting a patent or seriously trying to exploit a patent, with a claim for performance in the event the patent is declared null (with regard to this aspect as well as the question whether a warranty can be given for an impossible obligation, cf., e.g., OSER-SCHÖNENBERGER, N. 11 to Art. 20 OR, as well as ENNECCERUS, Manual of Civil Law, 23rd/27th ed. I/2 p. 99). However, the plaintiff was right in not asserting a claim for performance, because even in the event the patent had not been declared null, he would have actually not benefited from it. Besides, the existence of the warranty cannot change the fact that the licensee had the opportunity to exploit the patent without any interference at all at least during a certain period of time. One could even opine that for the past the warranty had been fully satisfied since the licensee was in no way disturbed in his civil possession.

*c)*     Furthermore, the legal situation governing the purchase of a void patent also argues in favor of rejecting unrestricted nullification of the licensing agreement, because licensing a patent and buying a patent bear a close relationship to each other. At least in terms of the possibility to exploit the patent, the standing of a holder of a license granted for a longer period of time and covering a large territory is almost identical to that of a purchaser. Approximating the effects of patent nullity on a purchase and on a licensing agreement as much as possible therefore suggests itself. However, the federal court has ruled that the *ex post facto* nullification of a patent does not also imply the nullity of the patent purchase; rather, an obligation under a warranty for a sold right is assumed even though there is no third party within the meaning of Art. 192 OR asserting a superior right if, for

174         Protection of invention. No. 27.

example, the patent is declared void due to lack of novelty or lack of inventive step, (cf. BGE 57 II 404 et seqq.). However, according to the rule, Art. 192 OR cannot apply if it involves the sale of an item that has not even existed *ab initio*. However, with a view to Art. 171 OR, an exception is to be made in connection with the sale of a receivable, and as such nothing should be in the way of an analogous application of this legal provision to the sale of a patent (cf. BECKER N. 19 to Art. 192 OR, as well as SPOENDLIN in SJZ 43 p. 281 et seqq.). It can remain open in this connection whether this adjudication completely takes account of the conditions surrounding the purchase of a patent. In any case, if nullity of the purchase agreement regarding a retrospectively nullified patent is rejected, one cannot negate all effects incurred in the past in connection with a licensing agreement either.

   d)    Nowadays, the view according to which, in the event of patent nullity, the license fees paid or owed in connection with a void patent on the basis of a licensing agreement for the past can never be reclaimed and/or must be paid retroactively–irrespective of any actual benefit–is hardly subject to any serious challenges (cf. for Swiss law: WEIDLICH and BLUM, Swiss Patent Law, p. 308, STRAUSS, The Patent Law License p. 75 et seqq, GASS, The Nullity of the Patent under Swiss Law, p. 100 et seqq., SPOENDLIN, SJZ 43 p. 281 et seqq., RAMSEYER, The Licensing Agreement in Patents for Invention, p. 44 et seqq; for German law: PIETZKER, Patent Law, § 6 annotation 20, TETZNER, Patent Law, § 13 annotation 7, RASCH, The Licensing Agreement, p. 9 et seqq., furthermore RGZ 17 p. 53 et seqq., 86 p. 55 et seqq. and 101 p. 235 et seqq; for Austrian law: MUNK, The Patent Law License p. 148 et seq.; for French law: MAINIE, New Contract for Patents for Invention, 1,

[…]         175

No. 1557). Certain divergences are only to be found in the reasoning: In addition to the solution arrived at here, namely that as such, the licensing agreement pertaining to a void patent is void in principle as well, but leaves certain conditions prevailing in the past unaffected, another opinion holds that this represents a case of retrospective impossibility of performance within the meaning of Art. 119 OR. Some authors base this opinion on the provisions governing leases (Art. 275 in connection with Art. 254/55 OR). However, these solutions do not take adequate account of the circumstance that the nullity of the patent was, after all, existing *ab initio*, thus, that the subject of the agreement never existed. Finally, a last opinion even wants to assume that even in the face of nullity of the licensing agreement occurring *ex tunc* any decision about the fate of the license fees paid for the past would have to consider that the licensee fully enjoyed the obligations guaranteed to him under the agreement. However, this opinion irreconcilably conflicts with the nature of the effect *ex tunc*.

   e)    Because of the fact that the deviation from the principle that the nullity of an agreement has an *ex tunc* effect constitutes an exception necessitated by the special conditions in patent law, the licensee may be imposed the duty to pay license fees only for the time during which he actually was able to exploit the putative patent without restriction and he could reasonably be expected to make use of such exploitation. Therefore arguments cannot be based on the time of the declaration of nullity *per se*, rather the relevant time is the time at which the nullification, which later actually occurred, must have been seriously taken into consideration for the first time. (cf. RGZ 86 p. 55; SPOENDLIN, SJZ 43, p. 288). […]